NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 06-CV-112-JBC

YONG HO NAM                                                                                        PETITIONER

VS:                              **MEMORANDUM OPINION AND ORDER**

STEVEN DEWALT, Warden                                                                RESPONDENT

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Yong Ho Nam was incarcerated in the Federal Medical Center ("FMC") in Lexington, Kentucky, when he filed a *pro se* petition seeking a writ of habeas corpus under 28 U.S.C. §2241 [Record No. 2]. He named the warden as the respondent and later paid the district court filing fee for a habeas action.

This matter is before the court for screening.[1] 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)). For the reasons to be discussed below, the instant petition will be denied.

CLAIMS AND ALLEGATIONS

The following is a summary or construction of the allegations contained in Yong Ho Nam's original submissions and a later amended petition. Record Nos. 1-2, 5.

---

[1] As this is a *pro se* petition, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, the district court can dismiss a case at any time if it determines the action is frivolous or malicious or fails to state a claim upon which relief can be granted. 28 U.S.C. §1915(e)(2).

The petitioner was born in Seoul, Korea. He came to this country nineteen years ago at the age of three and has resided here continuously since that time. He claims to have a social security number, is a taxpayer and, after high school graduation has been working toward a higher degree. Nam alleges that he is not an alien but "is considered to be a permanent resident/fixture." He further claims that his parents and siblings were once permanent residents and are now U.S. citizens. Desiring to follow the same path to citizenship, the petitioner states that in 2002 he began the application process.

Nam contends that the citizenship process was interrupted by his indictment on criminal charges. The docket in *United States v. Nam*, E.D.Va. #1:03-CR-337-CMH-1, reveals that he was arrested on June 24, 2003, and indicted on July 24, 2003, on drug and firearm charges. He was convicted pursuant to a plea agreement and on February 13, 2004, was sentenced to 12 months for conspiracy to distribute a detectable amount of marijuana and a consecutive term of 5 years for use and carrying a firearm during and in relation to a drug trafficking offense. As a part of the plea agreement, Nam did not appeal. He did file a motion to vacate the judgment pursuant to 28 U.S.C. §2255, but it was denied, and the denial was affirmed by the United States Court of Appeals for the Fourth Circuit.

At the time he filed this action, the petitioner was still serving his criminal sentence. He claimed that during this incarceration, he had been trying to complete the citizenship process and was continuing to do so with the assistance of his prison unit manager and personnel in the INS[2] Office in Lexington. A part of that process requires that the applicant

---

[2] The Immigration and Naturalization Service has been abolished and its immigration enforcement function transferred to the United States Bureau of Immigration and Customs Enforcement ("ICE") in the Department of Homeland Security. The change does not affect merits of the petitioner's claim or resolution of the instant cause of action, however.

2

provide fingerprints. When he arranged for prison personnel to take them, however, the INS purportedly refused to accept them, insisting that only immigration personnel may do so.

Nam originally alleged that he had been "the subject of a mass deployment of immigrants located within the BOP system" to FMC-Lexington, and that the immigrants were all to be relocated again "to an institution located in Pennsylvania, Moshannon Valley, with the sole purpose of deportation once a sentence is served." After the filing of this action, apparently on or shortly after May 3, 2006, the petitioner was, indeed, moved from FMC-Lexington. In his latest pleading, he states that he has been moved to the immigration facility in Phillipsburg, Pennsylvania, "a remote location for the sole purpose of inevitable deportation."

Petitioner Nam asks the court to clarify that he is a U.S. national, rather than a criminal alien subject to deportation under INS § 237(a)(2)(A)(iii); compel the INS to accept his BOP fingerprints; remove all immigration detainers; and recommend him for a 6-month halfway house placement.

## DISCUSSION

Habeas corpus jurisdiction exists under the terms of 28 U.S.C. § 2241 when a petitioner asserts a claim that his *current* custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, the instant petitioner originally admitted that he was serving a criminal sentence. So long as his detention is in service of a valid criminal sentence, he fails to state a claim under § 2241. His petition is premature so long as he is only anticipating coming into the custody of the INS or its successor agency.

3

A prisoner must wait until he comes into the custody of the INS or ICE authorities to challenge its detention, as an immigration detainer or even pre-release notice from immigration does not confer custody to the INS.  See *Kendall v. INS*, 261 F.Supp.2d 296, 300-01 (S.D. N.Y) (noting the petitioner's status, characterizing his challenge to the INS detainer as being "obviously premature," and citing cases supporting its conclusion, including *Roldan v. Racette*, 984 F.2d 85, 88 (2nd Cir. 1993); *Campillo v. Sullivan*, 853 F.2d 593, 595 (8th Cir. 1988); and *Prieto v. Gluch*, 913 F.2d 1159, 1162-64 (6th Cir. 1990)).  *See also Hernandez v. Lindeman*, 2002 WL 31163074 (D. Minn. 2002) (unpublished) (relying on *Campillo*, 853 F.2d at 595).

A prisoner against whom an immigration detainer is lodged "may not challenge the detainer by way of habeas corpus until he is placed in the custody of the INS, an event which will not occur until [he] is released from his present term of confinement."  *Campillo*, 853 F.2d at 595.  Thus, to the extent that the instant petitioner has admitted that he is still serving his criminal sentence, any interference by this court is barred.

Even after the petitioner's sentence expires and he becomes detained under the authority of the INS, he may be detained by immigration authorities for not-insignificant periods of time.  If deportation proceedings are planned,  the governing statute requires that the alien "shall" be kept in custody until the proceedings are completed.  8 U.S.C. § 1226.

As to the length of this pre-hearing detention, it may be for six months or longer, so long as the detention is justified and reasonable. See *Ly v. Hansen*, 351 F.3d 263, 273 (6th Cir. 2003) (detention by the INS for 1½ years without a decision on removal, and without any special justification for the delay, was unreasonable and his actual removal not

reasonably foreseeable; therefore, the grant of habeas relief was affirmed). The reasonableness of the length of detention must be determined on a case-by-case basis under habeas review. *Id*. *See also Yang v. Chertoff*, 2005 WL 2177097 (E.D.Mich. 2005) (not reported) (discussing *Ly* and denying § 2241 petition of Yang, who had been in ICE custody for only three months).

Additionally, an immigration detainee may legally be held for significant periods of time *after* the hearing if an order of removal issues from the immigration judge. For this post-removal-order period of time, the governing statute is 8 U.S.C. § 1231. On its face, the statute provides that immigration authorities "shall remove" the alien within 90 days after the alien has been ordered removed.

Before the instant petitioner rushes to the courthouse after the passage of only 90 post-removal-order days, however, he is informed that the Supreme Court of the United States has interpreted § 1231 to permit an alien's detention to be even longer than 90 days. In the case of *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Court was presented with a permanent resident who had originally been admitted but later ordered removed, and he had been languishing in a lengthy detention afterward, well beyond the 90-day period which the statute allows.

The *Zadvydas* Court interpreted § 1231(a)(6) to authorize the detention of a post-removal-order permanent resident alien beyond 90 days, but held that the detention may last for only as long as is "reasonably necessary" to effectuate removal, and six months is the presumptive period of time that is reasonably necessary to effectuate removal. 533 U.S. at 689, 699. In *Clark v. Martinez*, 543 U.S. 371, 373 (2005), the Court extended the *Zadvydas* holding to inadmissible aliens under a removal order. *Id*. at 373. Thus, the

5

distinction which the petitioner emphasizes between his status as a permanent resident alien rather than an inadmissible alien is irrelevant to the length of permissible detention. After six months, the detention is improper only if either type of alien demonstrates, and the government fails to rebut, the lack of a significant likelihood of removal in the reasonably foreseeable future.

Following the *Zadvydas* decision, regulations were promulgated to meet the criteria established by the Supreme Court. *See* 8 C.F.R. § 241.4. One portion of the regulation provides that prior to the expiration of the removal period, the ICE district director shall conduct a custody review for an alien where the alien's removal cannot be accomplished during the removal period or is impracticable or contrary to public interest; and the director will then "notify the alien in writing that he or she is to be released from custody, or that he or she will be continued in detention pending removal or further review of his or her custody status." 8 C.F.R. § 241.4(k)(1)(i).

The instant petitioner has not alleged that any of the deadlines relevant to custody under § 1231 or its later regulations have passed. To the extent that the instant petitioner is awaiting a hearing or removal itself, detention will be presumptively reasonable for up to six months. The court concludes that the instant petitioner has failed to state any facts or legal grounds establishing or even suggesting that his current detention is illegal. This is true whether he is still serving a valid criminal sentence, has been transferred to the custody of immigration authorities for initiating removal proceedings, or was transferred to immigration authorities' custody for his ordered removal from the United States.

Accordingly, the petitioner having failed to state any facts or legal grounds establishing or even suggesting that his current detention is illegally long, his present

petition is premature. See *Cuevas-Rodriguez v. Chertoff*, 2006 WL 1421032 (E.D. Mich. 2006) (slip op.); *Aramayo-Escobar v. Bureau of Immigration and Customs Enforcement*, 2005 WL 2860648 (M.D. Pa. 2005) (slip op.).

## CONCLUSION

Based on the foregoing discussion, it is hereby **ORDERED** as follows:

(1)  Yong Ho Nam's petition for writ of habeas corpus is **DENIED**;

(2)  the petitioner's motion for the court to bar his transfer from FMC-Lexington [Record No. 2] is **DENIED** as moot; and

(3)  this action shall be **DISMISSED**, *sua sponte*, without prejudice, from the court's docket.

Signed on November 15, 2006

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY